AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

❏ Original          ❏ Dup



**CLERK'S OFFICE**
**A TRUE COPY**

**Aug 09, 2023**

s/ JDH

Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information associated with Facebook account<br>"Mike Torres", as further described in<br>Attachment A | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>Case No.  **23-M-424 (SCD)** |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before   8-23-23   *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.      ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   Hon. Stephen C. Dries   .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:      8-9-23. 9:20 am                    *Stephen C. Dries*
                                                                                  *Judge's signature*

City and state:   Milwaukee, WI                    Honorable Stephen C. Dries, U.S. Magistrate Judge
                                                                              *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with Facebook account "Mike Torres" - https://www.facebook.com/profile.php?id=100087891685954 that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

1

# ATTACHMENT B

## Particular Things to be Seized

**I.     Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)     All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity logs for the account and all other documents showing the user's posts and other Facebook activities from January 1, 2023 to present;

(c)     All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from January 1, 2023 to present, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)     All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists,

1

including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, advertising ID, and user agent string;

(f) All other records and contents of communications and messages made or received by the user from January 1, 2023 to present, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g) All "check ins" and other location information;

(h) All IP logs, including all records of the IP addresses that logged into the account;

(i) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j) All information about the Facebook pages that the account is or was a "fan" of;

2

(k)    All past and present lists of friends created by the account;

(l)    All records of Facebook searches performed by the account from January 1, 2023 to present;

(m)    All information about the user's access and use of Facebook Marketplace;

(n)    The types of service utilized by the user;

(o)    The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)    All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)    Records of any Facebook accounts that are linked to the account by machine cookies (meaning all Facebook user IDs that logged into Facebook by the same machine as the account); and

(r)    All records pertaining to communications between Meta and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Meta is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) (Distribution and Possession with Intent to Distribute a Controlled Substance), 843(b) (Unlawful Use of a Communication Facility (including the mails) to Facilitate the Distribution of a Controlled Substance), and 846 (Conspiracy to Distribute and Possession with the Intent to Distribute Controlled Substances) involving Miguel TORRES-ORTIZ since January 1, 2023, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a)     The possession and sale of illegal drugs;

(b)     Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c)     Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d)     The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

4



CLERK'S OFFICE
A TRUE COPY
Aug 09, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

In the Matter of the Search of    )
*(Briefly describe the property to be searched*    )
*or identify the person by name and address)*    )
   )
Information associated with Facebook account    )
"Mike Torres", as further described in Attachment A    )

Case No. **23-M-424 (SCD)**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§§ 841, 846; & 843 (b) | Possession with intent to distribute, and conspiracy to possess with Intent to distribute a controlled substance; Unlawful Use of a Communication Facility (including the mails) to Facilitate the Distribution of a Controlled Substance. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_Tyler Fink_
Digitally signed by Tyler Fink
Date: 2023.08.08 16:07:27 -05'00'

*Applicant's signature*

Tyler Fink, USPIS Postal Inspector

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*

Date:    8-9-23

*Judge's signature*

City and state:    Milwaukee, WI      Honorable Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Tyler Fink, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the account.

2.      I am a Postal Inspector with the United States Postal Inspection Service ("USPIS").  I have been employed as a full-time law enforcement officer since June 2014.

3.      The USPIS is the primary investigative arm of the United States Postal Service ("USPS") and is charged under Title 18, United States Code, Section 3061 with the enforcement of laws governing the use and movement of the United States Mail, including, but not limited to, the misuse and fraudulent schemes involving the mail, crimes relating to mail fraud, identity theft, and narcotics trafficking involving the U.S. Mail.

4.      I am currently assigned to the USPIS Milwaukee Office, Multi-function team, as well as being placed on the High Intensity Drug Trafficking Area ("HIDTA") Interdiction Task Force.  The USPIS Milwaukee Office investigates USPS customers involving narcotics, prohibited mailings, controlled substances, and other matters related to the Postal Service.  The Milwaukee office's team has intercepted numerous parcels, which were found to contain narcotics or proceeds of narcotics trafficking and other criminal activity.

5.      In 2014, I completed the Peace Officer Standards and Training certification at the St. Louis County and Municipal Police Academy while employed as a City of Creve Coeur Police Officer.  While working as a Police Officer, I received extensive training in narcotics investigations.  In 2017, I graduated from the USPIS Basic Inspector Training program.  I received advanced training by the USPIS in the investigation of controlled substances or proceeds/payments being transported through the United States.

6.      I have participated in numerous complex narcotics investigations that involved violations of state and federal controlled substances laws including Title 21, United States Code, Sections 841(a)(1) and 846 (possession with intent to distribute a controlled substance and conspiracy to possess with intent to distribute a controlled substance), and other related offenses. I have had both formal training and have participated in numerous complex drug trafficking investigations, including ones using wiretaps.  More specifically, my training and experience includes the following:

2

a. I have used informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b. I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

c. I have participated in several search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

d. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base, ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

e. I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f. I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations. Additionally, I know that drug traffickers often use social media and/or third-party applications, to include Facebook, to conduct and facilitate their drug trafficking activities;

g. I know that drug traffickers commonly have in their possession, and at their residences and other storage locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials;

i. I know large-scale drug traffickers often purchase and/or title their assets in fictitious names, aliases, or the names of relatives, associates,

3

or business entities to avoid detection of these assets by government agencies. I know that even though these assets are in names other than the drug traffickers, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them;

j. I know large-scale drug traffickers maintain on-hand large amounts of U.S. currency to maintain and finance their ongoing drug business; and

k. I know large-scale drug traffickers often use electronic equipment such as telephones (land-lines and cell phones), computers, telex machines, facsimile machines, currency counting machines, and telephone answering machines to generate, transfer, count, record and/or store the information described in the items above, as well as conduct drug trafficking activities.

7. I have been the affiant on over 90 warrants in federal court. Based on my training, personal experience, on the job training, and working with other USPIS Postal Inspectors and HIDTA drug task force officers, I know narcotics, drugs, paraphernalia, controlled substances, and moneys associated with the sale of narcotics, drugs, and controlled substances are sent through the USPS system, and I am familiar with many of the methods used by individuals who attempt to use the USPS to illegally distribute controlled substances.

8. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

9. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly

4

participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

10.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) (Distribution and Possession with Intent to Distribute a Controlled Substance), 843(b) (Unlawful Use of a Communication Facility (including the mails) to Facilitate the Distribution of a Controlled Substance), and 846 (Conspiracy to Distribute and Possession with the Intent to Distribute Controlled Substances) have been committed, are being committed, and/or will be committed by Miguel TORRES-ORTIZ, a/k/a "Mike" TORRES, ("TORRES") (DOB XX/XX/1989).  There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

<strong><u>PROBABLE CAUSE</u></strong>

11.     The USPIS, the Drug Enforcement Administration ("DEA"), and the Milwaukee Police Department ("MPD") are currently investigating a drug trafficking organization utilizing the shipments of cocaine-laden USPS parcels ("Subject Offense") from Puerto Rico to Wisconsin.

12.     Based on the investigation to date, law enforcement believes multiple co-conspirators in the Milwaukee, Wisconsin area are working together to receive USPS parcels containing kilograms of suspected cocaine.

5

**USPS Parcel Seizure of Approximately Two Kilograms of Cocaine**

13.     On May 22, 2023, I applied for and received a federal search warrant for the following suspicious parcel: USPS Priority Mail parcel XXXXXXXXXXXXXXXXX9203 ("Subject Parcel 1").  Subject Parcel 1 was approximately a 12" x 3.5" x 14.125" USPS parcel weighing approximately 8 lbs. 5 oz.  Subject Parcel 1 bore a handwritten label addressed to an address in the city of Milwaukee, Wisconsin.  Subject Parcel 1 was postmarked on May 19, 2023, in Ciales, Puerto Rico.  The search warrant was issued by United States Magistrate Judge William Duffin in the Eastern District of Wisconsin.  Upon executing the search warrant on Subject Parcel 1, case agents discovered approximately two kilograms of suspected cocaine secreted inside a set of bed sheets wrapped in gift wrap paper.

**Information Obtained From Cooperating Source 1 ("CS-1")**

14.     On May 22, 2023, case agents conducted a controlled delivery of Subject Parcel 1.  An individual who later agreed to become a confidential source ("CS-1") was arrested and charged by the State of Wisconsin after taking possession of Subject Parcel 1.  CS-1 was also on state supervision, which has since been revoked. CS-1 is cooperating with law enforcement in exchange for consideration in relation to CS-1's pending state charges, to include two counts of possession with intent to distribute cocaine and felon in possession of a firearm.  CS-1 has never been paid money in exchange for cooperation with law enforcement.  Thus far, the information provided by CS-1 has proven to be reliable and has been corroborated by, among other things, surveillance activities, USPS postal records, search warrants, and other information.

6

According to law enforcement databases, CS-1 has been arrested for Use of a Dangerous Weapon, Recklessly Endangering Safety, Possession with Intent-Marijuana, Possession of Marijuana, Fleeing/Eluding, Possession with Intent-Cocaine, Resisting or Obstructing an Officer, Armed Robbery, False Imprisonment, Probation Violation, Battery, and was convicted of Possession of Marijuana, Possession with Intent-Cocaine, and Resisting or Obstructing an Officer. Within the context of the information detailed and relied upon for purposes of this affidavit, case agents believe CS-1 is credible and CS-1's information reliable.

15. In May 2023, case agents spoke with CS-1, who provided information that was reliable given that CS-1 made statements both against CS-1's penal interest and corroborated by other information gathered during the course of the investigation. CS-1 stated CS-1 was working with "Miguel TORRES" to receive kilograms of cocaine via the USPS from Puerto Rico sources of supply. CS-1 confirmed the approximately two kilograms of suspected cocaine seized by case agents on May 22, 2023, was a shipment TORRES coordinated with his supplier to have shipped to CS-1. In exchange for the cocaine, CS-1 stated he was expected to pay TORRES $19,000 per kilogram. CS-1 advised CS-1 has paid TORRES for approximately five kilograms of cocaine to be shipped to them. CS-1 stated CS-1 has been to TORRES's residence. CS-1 did not know the exact address, but said TORRES lived in West Allis in the area of S. 68th Street and W. Main Street. CS-1 was shown a photograph of 459 S. 68th Street, Milwaukee, Wisconsin. CS-1 said CS-1 believed the photograph was of TORRES's residence. CS-1 stated he has been to TORRES's residence to pay him for cocaine. CS-1 explained

7

TORRES also receives cocaine-laden USPS parcels for himself from Puerto Rico. CS-1 said the last time CS-1 successfully received a USPS parcel containing cocaine to an address in Milwaukee off of S. 12th Street, TORRES also received a cocaine parcel on the same date. CS-1 was shown surveillance photographs of CS-1 taking possession of a suspected cocaine-laden parcel in front of XXXX S. 12th Street in Milwaukee on May 10, 2023: USPS Priority Mail parcel XXXXXXXXXXXXXXXXX7297 ("Subject Parcel 2"). Subject Parcel 2 was a USPS medium flat rate parcel weighing approximately 5 lbs. 6 oz. Subject Parcel 2 bore a handwritten label addressed to XXXX S. 12th Street in Milwaukee Wisconsin. Subject Parcel 2 was postmarked on May 8, 2023, in Vega Alta, Puerto Rico 00692 at approximately 8:50 a.m. CS-1 confirmed the photograph depicted CS-1 accepting Subject Parcel 2 and further confirmed the parcel did contain cocaine. CS-1 confirmed the date CS-1 received Subject Parcel 2 is the same date TORRES received a USPS parcel containing cocaine. CS-1 said TORRES's cocaine supplier in Puerto Rico liked to ship cocaine concealed within bed sheets wrapped in gift wrap paper. This is the same concealment method used for Subject Parcel 1.

16. A review of the USPS business records linked the following suspicious parcel from Puerto Rico delivered on the same date: USPS Priority Mail parcel XXXXXXXXXXXXXXXXX9331 ("Subject Parcel 3"). Subject Parcel 3 was a USPS medium flat rate parcel weighing approximately 5 lbs. 9 oz. Subject Parcel 3 bore a handwritten label addressed to "Fam. Torres, 459 S. 68th Milwaukee, WI 53214." Subject Parcel 3 was postmarked on May 8, 2023, in Corozal, Puerto Rico 00783 at

approximately 9:19 a.m. Subject Parcel 3 was delivered on May 10, 2023 at approximately 4:47 p.m.

17.     When comparing the handwritten shipping labels for Subject Parcel 2 and Subject Parcel 3, case agents noticed the handwriting used on both appeared similar in style.

18.     Using an internet search engine, it showed the Vega Alta Post Office, located at 100 Carr 2, Vega Alta, Puerto Rico 00692, which is the postmark location for Subject Parcel 2, is approximately a 20-minute drive from the Corozal Post Office, located at 100 Corozal Shop Center Suite 104, Corozal, Puerto Rico 00783, which is the postmark location for Subject Parcel 3.  Subject Parcel 3 was postmarked approximately 29 minutes after Subject Parcel 2. From my training and experience, I believe the subject(s) shipping Subject Parcel 2 and Subject Parcel 3 intentionally visited two different nearby post offices to conceal their participation in drug trafficking and to conceal the contents of the parcels.

19.     CS-1 was shown images from two different Facebook profiles for a "Mike Torres" who claimed to live in Milwaukee. CS-1 confirmed both profiles were for TORRES. The Facebook profiles are identified as **"Mike Torres" Facebook ID 100087891685954**, the **Target Account**, and "Mike Torres" Facebook ID 100061474113989.

20.     On June 13, 2023, case agents interviewed A.R. after she contacted them with information related to this investigation.  A.R. is a close associate of CS-1.  A.R. stated since the arrest of CS-1, A.R. has been contacted several times via Facebook

9

messenger by TORRES.  A.R. stated A.R. has known TORRES for approximately a year and has spoken with him before.  A.R. showed case agents A.R.'s cell phone containing the text and audio messages sent to A.R. by the **Target Account**, believed to be used by TORRES.  A.R. played the audio messages for case agents.  All of the messages were in Spanish and A.R. confirmed the male's voice in the message was TORRES's voice.  A.R. said one of the voice messages was TORRES stating he "worked" with CS-1 and needs $38,000 to pay off certain people.  TORRES provided A.R. with his phone number as (414) 394-8122, and requested to be contacted.  Based upon their training, experience, and familiarity with this investigation, case agents believe that the $38,000 represents the money to be paid for Subject Parcel 1, which contained approximately two kilograms of suspected cocaine.

**CS-1 Cell Phone Download**

21.     While being interviewed, CS-1 provided consent and passcodes to have CS-1's cell phones downloaded and searched by case agents.  On June 5, 2023, I initiated a review of CS-1's cell phones.  One of CS-1's phones, a black iPhone with a black case, reflected that a contact saved as "Mike Torres" called and messaged CS-1 through Facebook Messenger, using the **Target Account**, more than 25 times after Subject Parcel 1 was delivered to CS-1 on May 22, 2023.  CS-1 stated TORRES mainly contacted CS-1 through Facebook Messenger when discussing their drug trafficking operation.

22.     Located on this same phone was a Facebook chat conversation between CS-1 and **"Mike Torres" Facebook profile 100087891685954**, or the **Target Account**. This is the same profile identified by CS-1 and A.R. as belonging to TORRES.  On May

10

22, 2023, at approximately 11:18 a.m., TORRES sent CS-1 the tracking number for the parcel seized by case agents (Subject Parcel 1).

### Target Cell Phone Subpoena

23.     Case agents served a subpoena to T-Mobile for information related to the number provided by TORRES.  The T-Mobile subpoena return showed no subscriber information for Target Cell Phone.  I know individuals involved in drug trafficking, often do not provide phone companies with their true information to conceal their identities from the phone company and any law enforcement officer that may have reason to request records regarding their service.

### Facebook Preservation Letter

24.     In my training and experience, I know that drug dealers often communicate via messaging applications including Facebook Messenger.  Drug dealers often discuss trafficking details including prices, quantities, terms of deals, and/or USPS tracking numbers with other dealers and customers.  In this investigation, TORRES previously used Facebook to speak with CS-1 to discuss drug dealing per CS-1's admissions.  Given TORRES's prior Facebook messages to both CS-1 and A.R. regarding drug trafficking using Facebook, I believe there would be additional evidence of TORRES's drug dealing activities through one or more of his Facebook accounts. Searching his Facebook account could show additional drug related conversations, photos, videos, contacts, and/or USPS tracking numbers that are evidence of his drug trafficking organization.

25.     On June 30, 2023, a preservation request ws submitted to Facebook, Inc. for TORRES's Facebook account, identified by URL of **"Mike Torres" - https://www.facebook. com/profile.php?id=100087891685954**.

## BACKGROUND CONCERNING FACEBOOK[1]

26.     Meta owns and operates Facebook, a free-access social networking website that can be accessed at http://www.facebook.com.  Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

27.     Meta asks Facebook users to provide basic contact and personal identifying information either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Each Facebook user is assigned a user identification number and can choose a username.

28.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect

---

[1] The information in this section is based on information published by Meta on its Facebook website, including, but not limited to, the following webpages: "Privacy Policy," available at https://www.facebook.com/privacy/policy; "Terms of Service," available at https://www.facebook.com/legal/terms; "Help Center," available at https://www.facebook.com/help; and "Information for Law Enforcement Authorities," available at https://www.facebook.com/safety/groups/law/guidelines/.

directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

29.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

30.     Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's

13

profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

31.     Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes.  Users can "tag" other users in a photo or video, and can be tagged by others.  When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

32.     Facebook users can use Facebook Messenger to communicate with other users via text, voice, video.  Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and also retains transactional records related to voice and video chats.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

33.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

34.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites.  Facebook users can also become "fans" of particular Facebook pages.

35.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

14

36. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

37. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

38. In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

39. Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform. For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

40. Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

41.     Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

42.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.  Further, Facebook account activity can show how and when the account was accessed or used.

For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, location information retained by Meta may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

43. Therefore, the servers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

<u>**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**</u>

44. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta to disclose to the government copies of the records and other information (including the content of communications) particularly described in

17

Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

45.     Based on the foregoing, I request that the Court issue the proposed search warrant.

46.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving it on Meta.  Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

47.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

18

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with Facebook account "Mike Torres" - https://www.facebook.com/profile.php?id=100087891685954 that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

1

**Particular Things to be Seized**

**I.      Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)      All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)      All activity logs for the account and all other documents showing the user's posts and other Facebook activities from January 1, 2023 to present;

(c)      All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from January 1, 2023 to present, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)      All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists,

1

including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, advertising ID, and user agent string;

(f) All other records and contents of communications and messages made or received by the user from January 1, 2023 to present, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g) All "check ins" and other location information;

(h) All IP logs, including all records of the IP addresses that logged into the account;

(i) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j) All information about the Facebook pages that the account is or was a "fan" of;

2

(k) All past and present lists of friends created by the account;

(l) All records of Facebook searches performed by the account from January 1, 2023 to present;

(m) All information about the user's access and use of Facebook Marketplace;

(n) The types of service utilized by the user;

(o) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q) Records of any Facebook accounts that are linked to the account by machine cookies (meaning all Facebook user IDs that logged into Facebook by the same machine as the account); and

(r) All records pertaining to communications between Meta and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Meta is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

3

**II. Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) (Distribution and Possession with Intent to Distribute a Controlled Substance), 843(b) (Unlawful Use of a Communication Facility (including the mails) to Facilitate the Distribution of a Controlled Substance), and 846 (Conspiracy to Distribute and Possession with the Intent to Distribute Controlled Substances) involving Miguel TORRES-ORTIZ since January 1, 2023, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a)　The possession and sale of illegal drugs;

(b)　Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c)　Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d)　The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

4

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Meta Platforms, Inc. ("Meta"), and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Meta. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.  all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Meta, and they were made by Meta as a regular practice; and

b.  such records were generated by Meta's electronic process or system that produces an accurate result, to wit:

1.  the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Meta in a manner to ensure that they are true duplicates of the original records; and

2. the process or system is regularly verified by Meta, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____
Date                               Signature

2